**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| THE VLADIMIR GUSINSKY REV. TRUST, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| | ) |
| Plaintiff, | ) Case No. 17-10338 |
| | ) |
| v. | ) JURY TRIAL DEMANDED |
| | ) |
| CYNOSURE, INC., MICHAEL R. DAVIN, WILLIAM O. FLANNERY, BRIAN M. BAREFOOT, ETTORE V. BIAGIONI, MARINA HATSOPOULOS, THOMAS H. ROBINSON, HOLOGIC, INC., and MINUTEMAN MERGER SUB, INC., | ) CLASS ACTION ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on February 14, 2017 (the "Proposed Transaction"), pursuant to which Cynosure, Inc. ("Cynosure" or the "Company") will be acquired by Hologic, Inc. ("Parent") and Minuteman Merger Sub, Inc. ("Merger Sub," and together with Parent, "Hologic") through a tender offer currently scheduled to expire on March 21, 2017.

2. On February 14, 2017, Cynosure's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger

Agreement") with Hologic.  Pursuant to the terms of the Merger Agreement, shareholders of Cynosure will receive $66.00 in cash for each share of Cynosure common stock.

3.     On February 22, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.     The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Cynosure common stock.

9.      Defendant Cynosure is a Delaware corporation and maintains its principal executive offices at 5 Carlisle Road, Westford, Massachusetts 01886.  Cynosure's common stock is traded on the NasdaqGS under the ticker symbol "CYNO."

10.     Defendant Michael R. Davin ("Davin") has served as a director and Chief Executive Officer ("CEO") of Cynosure since September 2003 and as Chairman of the Board since October 2004.  According to the Company's website, Davin served as President from September 2003 to July 2014 and was reappointed to that position in May 2016.

11.     Defendant William O. Flannery ("Flannery") has served as a director of Cynosure since 2013 and as Lead Director since January 2015.  According to the Company's website, Flannery is a member of the Nominating and Corporate Governance Committee and the Compensation Committee.

12.     Defendant Brian M. Barefoot ("Barefoot") has served as a director of Cynosure since 2011.  According to the Company's website, Barefoot is Chair of the Audit Committee and a member of the Compensation Committee.

13.     Defendant Ettore V. Biagioni ("Biagioni") has served as a director of Cynosure since 2005.  According to the Company's website, Biagioni is Chair of the Nominating and Corporate Governance Committee and a member of the Audit Committee.

14.     Defendant Marina Hatsopoulos ("Hatsopoulos") has served as a director of Cynosure since 2008.  According to the Company's website, Hatsopoulos is a member of the Audit Committee and the Nominating and Corporate Governance Committee.

15.     Defendant Thomas H. Robinson ("Robinson") has served as a director of Cynosure since 2005.  According to the Company's website, Robinson is Chair of the Compensation Committee.

16.     The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

17.     Defendant Parent is a Delaware corporation and maintains its principal executive offices at 250 Campus Drive, Marlborough, Massachusetts 01752.

18.     Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of Cynosure (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20.     This action is properly maintainable as a class action.

21.     The Class is so numerous that joinder of all members is impracticable.  As of February 15, 2017, there were approximately 23,914,023 shares of Cynosure common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and

adequately protect the interests of the Class.

24.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25.    Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

26.    Cynosure develops, manufactures, and markets aesthetic treatment systems that enable plastic surgeons, dermatologists, and other medical practitioners to perform non-invasive and minimally invasive procedures to remove hair, treat vascular and benign pigmented lesions, remove multi-colored tattoos, revitalize the skin, reduce fat through laser lipolysis, reduce cellulite, clear nails infected by toe fungus, ablate sweat glands, and improve women's health.

27.    The Company also markets radiofrequency ("RF") energy-sourced medical devices for precision surgical applications such as facial plastic and general surgery, gynecology, ear, nose, and throat procedures, ophthalmology, oral and maxillofacial surgery, podiatry, and proctology.

28.    Cynosure's product portfolio is comprised of a broad range of energy sources including Alexandrite, diode, Nd: YAG, picosecond, pulse dye, Q-switched lasers, intense

pulsed light, and RF technology.

29.     Cynosure sells its products globally under the Cynosure, Palomar, ConBio, and Ellman brand names through a direct sales force in the United States, Canada, France, Morocco, Germany, Spain, the United Kingdom, Australia, China, Japan, and Korea, and through international distributors in approximately 120 other countries.

30.     On February 7, 2017, Cynosure issued a press release wherein it reported its financial results for the fourth quarter and full year 2016.  For the fourth quarter, the Company reported that North American product revenue was up 24 percent to $69.5 million, and international product revenue was up 12 percent to $33.2 million.  For the full year 2016, the Company reported record annual revenue of $433.5 million, up 28 percent year-over-year.

31.     With respect to the financial results, Individual Defendant Davin, President and CEO of the Company, commented:

> We capped an outstanding year with a strong fourth quarter, as revenue increased 19 percent year-over-year to a quarterly record $122.1 million. The fourth quarter of 2016 marked our 28th consecutive quarter of year-over-year top-line growth, an accomplishment that demonstrates the enduring strength and consistent quality of our product portfolio.  We continue to lead the aesthetic device industry by focusing on innovation, execution and growth.  The 23 percent compound annual top-line growth we've achieved over the past five years reflects our ability to cultivate the right organic opportunities, make disciplined strategic investments and maintain a solid financial model.
>
> SculpSure®, our unique laser treatment for non-invasive fat destruction, continues to outpace expectations. In the fourth quarter of 2016, we placed the highest number of SculpSure units in a quarter since we launched the device in late 2015. MonaLisa Touch®, our first aesthetic laser product for women's health, also performed well, recording the second-highest unit placements in a quarter in its history. More than 70 percent of SculpSure sales in the quarter came from the non-core physician market.  Bundled sales of multiple products increased to 31 percent of revenues during the quarter, which we see as powerful evidence of our competitive advantage as an aesthetic portfolio company.  With the increasing cost and complexity of health insurance, Cynosure offers multiple solutions across four large categories – fat reduction, skin revitalization/tattoo removal, hair

removal and women's health – that enable physicians to expand the base of cash-pay patients in their practices.

32.     Davin concluded:

Demand for aesthetic procedures in North America was our largest growth driver over the course of 2016, led by the full launch of our SculpSure platform in the first quarter[.] Our international business gained momentum in the second half of 2016, reflecting our focus on securing additional regulatory clearances such as the third quarter 2016 marketing approval of SculpSure in Korea and the China Food and Drug Administration's clearance of the Icon™ Aesthetic System in November.

33.     Nevertheless, on February 14, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which Cynosure will be acquired for inadequate consideration.

34.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 6.1(a) of the Merger Agreement states, in relevant part:

(a) No Solicitation or Negotiation. Except as set forth in this Section 6.1, until the Specified Time, neither the Company nor any of its Subsidiaries shall, and the Company shall cause its directors, officers and senior management not to and shall use reasonable efforts to cause its other Representatives not to, directly or indirectly:

(i) solicit, initiate or knowingly facilitate or knowingly encourage any inquiries or the making of any proposal or offer that constitutes, or would reasonably be expected to lead to, any Acquisition Proposal;

(ii) provide any non-public information concerning the Company or any of its Subsidiaries to any Person or group who has made or would reasonably be expected to make any Acquisition Proposal or for the purpose of encouraging or facilitating any Acquisition Proposal;

(iii) amend or grant a waiver or release under any standstill or similar agreement with respect to any Company Common Stock (other than for Parent or its Affiliate), except under the circumstances permitted under this Section 6.1(a); or

(iv) enter into, continue or otherwise participate in any discussions or negotiations regarding any Acquisition Proposal.

35.    Section 6.1(e) further provides:

(e) Cessation of Ongoing Discussions. The Company shall, and shall cause its Representatives to, except with respect to the Parent and the Purchaser, (i) cease immediately all discussions and negotiations that commenced prior to the date of this Agreement regarding any proposal that constitutes, or could reasonably be expected to lead to, an Acquisition Proposal, (ii) request the prompt return or destruction of all confidential or non-public information previously furnished to any Person within the last twelve (12) months for the purpose of evaluating a possible Acquisition Proposal and (iii) terminate access to any physical or electronic data rooms relating to a possible Acquisition Proposal; provided, however, that the foregoing shall not in any way limit or modify any of the Company's rights under the other provisions of this Section 6.1.

36.    Further, the Company must promptly advise Hologic of any proposals or inquiries received from other parties.  Section 6.1(c) of the Merger Agreement states:

(c) Notices to the Parent. The Company shall promptly (and in any event within one (1) Business Day) advise the Parent orally and in writing of the Company's receipt of any Acquisition Proposal, including the material terms and conditions of any such Acquisition Proposal and the identity of the Person making any such Acquisition Proposal. Thereafter, the Company shall keep Parent reasonably informed on a reasonably prompt basis of any material developments with respect to any such Acquisition Proposal, including any material changes to the terms thereof. The Company shall promptly (and, in any event, within one (1) Business Day) provide Parent with copies of all written requests, proposals or offers, including proposed agreements, and oral summaries of any material oral requests, proposals or offers, received by or made to the Company from any Person or group making an Acquisition Proposal. The Company shall not enter into any confidentiality agreement subsequent to the date hereof which prohibits the Company from providing to Parent the information required to be provided to Parent pursuant to this Section 6.1(c).

37.    Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Hologic a "matching right" with respect to any

8

"Superior Proposal" made to the Company. Section 6.1(b) of the Merger Agreement provides, in

relevant part:

> (iii) Notwithstanding the foregoing or anything to the contrary set forth in this Agreement (including the provisions of this Section 6.1), at any time prior to the Acceptance Time, the Company Board may (A) effect a Company Board Recommendation Change in response to a Superior Proposal concurrently with causing the Company to terminate this Agreement pursuant to and in accordance with Section 8.1(f) in order to enter into a definitive agreement providing for such Superior Proposal or (B) effect a Company Board Recommendation Change (other than pursuant to clause (z) of the definition thereof) in response to an Intervening Event if (in the case of either clause (A) or (B): (i) the Company Board shall have determined in good faith (after consultation with outside counsel) that the failure to effect a Company Board Recommendation Change would be reasonably likely to be inconsistent with its fiduciary duties under applicable law; (ii) the Company has notified the Parent in writing at least four (4) Business Day prior to taking such action that it intends to effect a Company Board Recommendation Change, describing in reasonable detail the reasons for such Company Board Recommendation Change (a "Recommendation Change Notice") (it being understood that the Recommendation Change Notice shall not, in and of itself, constitute a Company Board Recommendation Change or a Trigger Event for purposes of this Agreement so long as such notice clearly states that it is not a Company Board Recommendation Change and that the Company Board is not changing the Company Board Recommendation); (iii) if requested by the Parent, the Company shall have made available and instructed its Representatives to discuss and negotiate with the Parent's Representatives any proposed modifications to the terms and conditions of this Agreement (in a manner that would obviate the need to effect such Company Board Recommendation Change) during the four (4) Business Day period following delivery by the Company to the Parent of such Recommendation Change Notice; and (iv) at the end of such four (4) Business Day period, the Company Board shall have determined in good faith (after consultation with outside counsel), after giving effect to the terms of any revised offer by the Parent, that the failure to effect a Company Board Recommendation Change would still be reasonably likely to be inconsistent with its fiduciary duties under applicable law and, with respect to a Company Board Recommendation Change in response to a Superior Proposal, the Company Board has determined in good faith (after consultation with financial advisor and outside counsel) that such initial or revised (as applicable) Superior Proposal continues to constitute a Superior Proposal; provided that, if there are any material amendments, revisions or changes to the terms of any such Superior Proposal (including any revision to the amount, form or mix of consideration the Company's stockholders would receive as a result of the Superior Proposal, whether or not material), the Company shall notify the Parent of each such amendment, revision or change in compliance with Section 6.1(c) and the applicable four (4) Business Day period described above shall be extended until at

least two (2) Business Days after the time that the Parent receives notification from the Company of each such amendment, revision or change and the Company Board shall not make a Company Board Recommendation Change prior to the end of any such period as so extended and compliance with the other requirements described above during such period as so extended.

38.    Further locking up control of the Company in favor of Hologic, the Merger Agreement provides for a "termination fee" of $57.7 million, payable by the Company to Hologic if the Individual Defendants cause the Company to terminate the Merger Agreement.

39.    By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

***Inadequate Merger Consideration and Interests of the Company's Officers and Directors***

40.    The $66.00 per share merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

41.    Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

42.    Further, the merger consideration fails to adequately compensate the Company's stockholders for the significant synergies resulting from the merger.

43.    The financial analyses performed by the Company's own financial advisor, Leerink Partners LLC ("Leerink"), confirm the inadequacy of the merger consideration.  For example, Leerink's *Discounted Cash Flow Analysis* yielded implied per share equity values for the Company as high as $76.00.

44.    Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

45.     Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

46.     For example, Individual Defendant Davin stands to receive $30,256,639 in connection with the Proposed Transaction, including a retention bonus payment.

47.     The Company's three other named executive officers stand to receive $15,530,469 in connection with the merger.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

48.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

49.     The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

50.     First, the Solicitation Statement omits material information regarding Cynosure's financial projections and the financial analyses performed by Leerink in support of its so-called fairness opinion.

51.     With respect to Cynosure's financial projections, the Solicitation Statement fails to disclose:  (i) EBITDA for years 2017 through 2022; (ii) stock based compensation expense; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

52.     With respect to Leerink's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose:  (i) the calculated terminal values for the Company; (ii) EBITDA for year 2022; (iii) the basis for growing 2022 EBITDA by 10%; and (iv) "the EBITDA multiples of selected publicly traded medical technology companies that Leerink deemed comparable for purposes of its analysis."

53.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.   Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

54.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) "Opinion of the Company's Financial Advisor"; (ii) "Certain Projected Financial Information"; (iii) "Recommendation of the Company Board"; and (iv) "Background and Reasons for the Company Board's Recommendation."

55.     Second, the Solicitation Statement omits material information regarding the background of the Proposed Transaction.   The Company's stockholders are entitled to an accurate description of the "process" the directors used in coming to their decision to support the Proposed Transaction.

56.     For example, the Solicitation Statement fails to disclose the nature of the discussions and negotiations regarding post-transaction employment arrangements for Company management, including but not limited to those held between Individual Defendant Davin and Stephen MacMillan, CEO of Parent.

57.     The Solicitation Statement also fails to disclose whether "Party B," which submitted a preliminary proposal to acquire the Company for $65.00 per share in cash on February 8, 2017, provided comments to the draft confidentiality agreement provided by the

Company on February 10, 2017, as Party B indicated that it "would provide any comments to the agreement as soon as practicable."

58.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement:  (i) "Arrangements with Current Executive Officers and Directors of the Company"; (ii) "Recommendation of the Company Board"; and (iii) "Background and Reasons for the Company Board's Recommendation."

59.     Third, the Solicitation Statement omits material information regarding potential conflicts of interest of Leerink.

60.     Specifically, the Proxy Statement fails to disclose the actual amount of the fee Leerink will receive for the services it rendered in connection with the Proposed Transaction.

61.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

62.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement:  (i) "Opinion of the Company's Financial Advisor"; (ii) "Recommendation of the Company Board"; and (iii) "Background and Reasons for the Company Board's Recommendation."

63.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Cynosure's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

13

65.    Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact
or omit to state any material fact necessary in order to make the statements made,
in the light of the circumstances under which they are made, not misleading . . . in
connection with any tender offer or request or invitation for tenders[.]

66.    Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

67.    The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

68.    The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

69.    By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

70.    The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

71.    Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

72.    By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

73.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

74.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### (Claim for Violation of 14(d) of the 1934 Act Against Defendants)

75.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

77.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

78.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

79.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

80.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

81.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Hologic)**

82.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

83.     The Individual Defendants and Hologic acted as controlling persons of Cynosure within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Cynosure and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

84.     Each of the Individual Defendants and Hologic was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of statements or cause them to be corrected.

85.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as

alleged herein, and exercised the same.   The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.   They were thus directly connected with and involved in the making of the Solicitation Statement.

86.    Hologic also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

87.    By virtue of the foregoing, the Individual Defendants and Hologic violated Section 20(a) of the 1934 Act.

88.    As set forth above, the Individual Defendants and Hologic had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

89.    As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

90.    Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.    Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.    In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: March 1, 2017

**MATORIN LAW OFFICE, LLC**

By: */s/ Mitchell J. Matorin*

**OF COUNSEL:**

Mitchell J. Matorin (BBO# 649304)
18 Grove Street, Suite 5
Wellesley, MA 02482
(781) 453-0100

**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

*Attorneys for Plaintiff*

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 3112
Berwyn, PA 19312
(484) 324-6800